**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| |
|---|
| NEW YORK DIGITAL INVESTMENT GROUP LLC, NYDIG TRUST COMPANY LLC, NYDIG MINING LLC, and STONE RIDGE HOLDINGS GROUP LP,<br><br>*Plaintiffs*,<br><br>v.<br><br><br>MINTVEST CAPITAL, LTD.,<br><br>*Defendant*. |

C.A. No.: 25-cv-714-MN

**PLAINTIFFS' MOTION TO REMAND AND FOR REIMBURSEMENT OF
REASONABLE ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1447(c)**

Plaintiffs New York Digital Investment Group LLC ("NYDIG LLC"), NYDIG Trust Company LLC ("NYDIG Trust"), NYDIG Mining LLC ("NYDIG Mining"), and Stone Ridge Holdings Group LP ("Stone Ridge" and collectively, "Plaintiffs") respectfully submit this motion to remand and for reasonable attorneys' fees.

**NATURE AND STAGE OF THE PROCEEDINGS**

1.    Plaintiffs filed a complaint for declaratory relief (the "Complaint") on April 21, 2025 in the Delaware Superior Court. (D.I. 1-1.) The Complaint contains three causes of action seeking a declaration under the Delaware Declaratory Judgment Act, 10 *Del. C.* § 6501, that Defendant Mintvest Capital Ltd. ("Mintvest") is not entitled to any payments pertaining to NYDIG LLC's acquisition of Coinmint LLC ("Coinmint"), a bitcoin mining company in which Mintvest formerly had an ownership interest. Mintvest purported to remove the action to this Court on June 9, 2025. (D.I. 1.)

2.      Plaintiffs now seek to remand this action back to state court for lack of subject-matter jurisdiction. Plaintiffs further request an award of reasonable costs and attorneys' fees associated with this application pursuant to 28 U.S.C. § 1447(c).

## SUMMARY OF THE ARGUMENT

3.      Plaintiffs filed suit in Delaware state court to bring an end to Mintvest's wrongful efforts to extract payments from them pertaining to the acquisition of Coinmint by NYDIG LLC. There is no basis for Mintvest to claim that Plaintiffs owe it anything at all, but Mintvest has nevertheless pursued litigation against them on a series of meritless legal theories. Plaintiffs therefore seek a declaration that they owe Mintvest nothing.

4.      The parties' dispute may not be heard in this Court, however, because the Court does not have subject-matter jurisdiction over the action. The case must be remanded to the Delaware Superior Court pursuant to 28 U.S.C. § 1447(c).

5.      Mintvest's sole alleged basis for invoking this Court's subject-matter jurisdiction is federal-question jurisdiction under 28 U.S.C. § 1331, even though Plaintiffs' complaint does not assert any federal claims. That invocation of § 1331 is without merit, as Mintvest fails to plead any of the required elements of federal-question jurisdiction pursuant to either (i) the well-pleaded complaint rule, or (ii) the four factors set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (2005).

6.      With respect to the well-pleaded complaint rule, Mintvest does not (and cannot) allege the existence of a federal cause of action on the face of Plaintiffs' complaint. Plaintiffs' claims are solely for declaratory relief pursuant to state law (*i.e.*, the Delaware Declaratory Judgment Act, 10 *Del. C.* § 6501) and, therefore, this Court does not have jurisdiction to sustain removal.

7.     Mintvest likewise fails to establish jurisdiction under the *Grable* test. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd*, 578 U.S. 374 (2016). First, Mintvest cannot establish that a federal issue is "necessarily raised" in this case, because, as noted, Plaintiffs' claims arise under Delaware state law. Second, Mintvest does not (and cannot) assert that any purported federal issue (of which there is none) would be "substantial." And finally, Mintvest fails to demonstrate that this Court could resolve Plaintiffs' state-law based claims without disrupting the federal-state balance approved by Congress. In the absence of federal-question jurisdiction, Plaintiffs' motion for remand should be granted.

8.     In addition to remanding this action, the Court should order Mintvest to reimburse the attorneys' fees that Plaintiffs were unreasonably forced to incur in connection with Mintvest's improper removal pursuant to 28 U.S.C. § 1447(c). There is not and never has been an objectively reasonable basis for Mintvest to have sought removal of Plaintiffs' state-law claims, and Mintvest has admitted in emails that it removed the case without a good-faith basis for doing so.

**STATEMENT OF FACTS**

**A.  Prior Litigation Concerning Mintvest's Alleged Equity in Coinmint**

9.     From December 2019 until March 2024, Defendant Mintvest and its principal Mr. Prieur Leary had an ongoing dispute with certain former business partners (non-parties Coinmint Living Trust and the Soniat Family Trust) regarding Mintvest's rights and interests in Coinmint LLC. (Complaint, D.I. 1-1, at ¶ 2.) The feud was litigated in numerous courthouses including in

3

Puerto Rico, Texas, and Delaware. (*Id.*; *see also* Appendix ("App'x") 172–228.)[1,2] On May 18, 2021, the Delaware Court of Chancery held, among other things: (i) Mintvest owned an 18.2% equity interest in Coinmint and (ii) the Court lacked subject-matter jurisdiction to rule on Mintvest's claim for equitable dissolution of Coinmint. (App'x 195–96, 206–07 (explaining Delaware "has not yet joined its sister courts in explicitly stating that it cannot dissolve foreign entities" but "Delaware decisions support doing so").)

10.    Months later, Coinmint and its majority equity holder, non-party Coinmint Living Trust, filed a declaratory judgment action in the Texas District Court (i) alleging that Mintvest breached Coinmint's operating agreement, and (ii) seeking to exercise their rights under the operating agreement to repurchase all of Mintvest's equity interest in Coinmint. (App'x 172–74.) On November 22, 2021, the Texas District Court approved the Coinmint parties' request "to buy out defendant Mintvest Capital Ltd. of its minority equity in plaintiff Coinmint, LLC." (*Id.*) On March 12, 2024, the Texas Court of Appeals affirmed the repurchase of Mintvest's equity interest, such that Mintvest presently has no equity in Coinmint. (App'x 176–87.)

**B. NYDIG LLC and Coinmint Execute the Merger Agreement**

11.    Following the adjudication that Mintvest does not own any interest in Coinmint, NYDIG LLC acquired Coinmint (the "Acquisition") on June 30, 2024. (D.I. 1-1, at ¶¶ 3, 21–29.)

---

[1] Copies of the Texas state court opinions were attached to Plaintiffs' complaint as Exhibits C and D. (*See* D.I. 1-1, at ¶ 35(c) nn.1–2.) However, in its Notice of Removal, Mintvest failed to attach any of Plaintiffs' exhibits, despite asserting that Mintvest filed "[t]rue and correct copies of *all* process and pleadings served upon Defendant in the state court action." (D.I. 1, at 3 (emphasis added).) Copies of Exhibits A, B, C, and D to the Delaware Complaint are provided in the Appendix. (App'x 2–187.)

[2] The Appendix, the Declaration of Douglas Curran, and the exhibits accompanying the Curran Declaration are filed in support of the instant motion as well as Plaintiffs' Opposition to Defendant's Motion to Transfer Venue.

4

The Acquisition was memorialized in an Agreement and Plan of Merger (the "Merger Agreement"). (*Id.* ¶ 3; *see also* App'x 3–163.)

12.     Under the Merger Agreement, NYDIG LLC acquired 100% of Coinmint's equity interests from Coinmint's owners (defined in the Merger Agreement as "Equityholders") in exchange for certain payments (defined in the Merger Agreement as "Merger Consideration"). (D.I. 1-1, at ¶ 4.) Mintvest was not an Equityholder in Coinmint at the time of the Merger Agreement. (*Id.* ¶ 5.) As a result, it did not have a right to receive Merger Consideration, or any other proceeds of the sale owed to Coinmint's Equityholders. (*Id.*)

## C.  Mintvest Files the Puerto Rico Litigation Seeking More than $41 Million

13.     Nevertheless, on January 9, 2025, Mintvest filed a complaint in the District of Puerto Rico against Stone Ridge, NYDIG Mining, and NYDIG Trust (collectively, the "Puerto Rico Defendants")—but notably not NYDIG LLC—captioned *Mintvest Capital, Ltd v. NYDIG Trust Co., et al.*, 25-CV-1019-FAB-MEL (D.P.R.), seeking "not less than" $41,400,000 in purported damages (the "Puerto Rico Litigation"). (*Id.* ¶ 30; *see also* App'x 164–71.) The Puerto Rico Litigation consists of two central allegations: (i) Mintvest purportedly "owned 18.2% of Coinmint" at the time of the Acquisition, and (ii) NYDIG Trust purchased Coinmint "without paying Mintvest for its 18.2% participation in Coinmint." (D.I. 1-1, at ¶ 31.) In its Prayer for Relief, Mintvest seeks 18.2% of Coinmint's purchase price, which Mintvest estimates to be $36.4 million. (*Id.*)

14.     It is apparent from the face of Mintvest's allegations in the Puerto Rico Litigation that it is actually seeking payment under the Merger Agreement (to which it is not a party) as compensation for the sale of equity in Coinmint (of which it has none). (*Id.* ¶ 32.) But in evident recognition of the fact that it has no rights under the Merger Agreement, Mintvest restyled its contract claim as a purported violation of Article 1489 of the Puerto Rico Civil Code, which is a

facially irrelevant construction-related statute. (*Id.* ¶¶ 7, 33–35.) And Mintvest also asserts an unspecified state law claim that it has labeled simply "Tort," without elaboration. (*Id.* ¶ 7.)

**D. The Puerto Rico Defendants Inform the Court that It Lacks Subject-Matter Jurisdiction Over the Puerto Rico Litigation**

15.    Mintvest's sole basis for invoking the Puerto Rico federal court's jurisdiction is the purported diversity of the parties. (*Id.* ¶ 8; *see also* App'x 241.) The complaint neither alleged a federal cause of action, nor asserted federal-question jurisdiction under 28 U.S.C. § 1331. (App'x 166, 168–69.) As a result, the parties were required to file corporate disclosure statements pursuant to Fed. R. Civ. P. 7.1(a)(2). On April 3, 2025, Mintvest disclosed that it is a Delaware corporation, and, on April 21, the Puerto Rico Defendants disclosed that each has a member or partner, as applicable, that is a Delaware corporation, and they therefore informed the court that diversity jurisdiction did not exist. (App'x 239, 243; *see also* D.I. 1-1, at ¶¶ 8, 38.)

16.    The following day, the Court directed the Puerto Rico Defendants "to file a motion to dismiss or for summary judgment as to the diversity issue" by May 21. (App'x 239.) The Puerto Rico Defendants subsequently filed a motion to dismiss for lack of subject-matter jurisdiction on May 13. (*Id.*)

**E. Plaintiffs File Suit for Declaratory Relief in Delaware State Court Because Federal Jurisdiction Does Not Exist**

17.    On April 21, 2025, Plaintiffs filed the instant lawsuit against Mintvest in the Superior Court of the State of Delaware, captioned *New York Digital Investment Group LLC et al. v. Mintvest Capital, Ltd.,* Case No. N25C-04-185 SKR CCLD ("Delaware Litigation"). (D.I. 1-1.) Plaintiffs seek a declaration that Mintvest is not owed any consideration or other payments of any sort under the Merger Agreement, under Article 1489, or under "tort" law. And Delaware is the natural location for that dispute, as all the parties on both sides are citizens of this state.

18.     On April 23—two days **after** the Delaware Litigation was filed—Mintvest sought leave of the Puerto Rico Court to amend its complaint in the Puerto Rico Litigation. Mintvest's proposed amended complaint sought to add additional defendants and new causes of action, including, among other things, federal securities claims. (App'x 228–37.)

19.     On June 9, Mintvest improperly removed the Delaware Litigation from the Delaware Superior Court to this Court. (D.I. 1, 2.)[3] Mintvest's sole basis for its removal is purported federal-question jurisdiction under 28 U.S.C. § 1331. (D.I. 1, at 2.) Mintvest did not inform Plaintiffs or their counsel that it intended to remove the case prior to filing its notice of removal. (Declaration of Douglas Curran ("Curran Decl."), at ¶ 4.) Mintvest asserts that "the underlying dispute involves claims under federal securities law," even though Plaintiffs have not alleged any such claims and no such claims are pending in the Puerto Rico Litigation. (D.I. 1, at 2.)

F.  **Magistrate Judge Issues a Report and Recommendation Recommending Dismissal of the Puerto Rico Litigation**

20.     On June 23, 2025, Magistrate Judge Marcos E. López issued a Report and Recommendation in the Puerto Rico Litigation recommending that District Judge Francisco A. Besosa (i) grant the Puerto Rico Defendants' unopposed motion to dismiss for lack of subject-matter jurisdiction, (ii) dismiss the Puerto Rico Litigation, and (iii) deny Mintvest's motion for leave to amend its complaint as moot. (App'x 239-240.) The Court concluded:

> Given the fact that both Plaintiff and Defendants are citizens of the same state, diversity jurisdiction cannot exist. Accordingly, the Court lacks subject-matter jurisdiction to entertain this case. As a corollary to the Court's lack of subject-matter jurisdiction, the Court is precluded from entertaining Plaintiff's motion for leave to file an amended complaint.

---

[3] At the time, Mintvest was impermissibly proceeding *pro se*. Mintvest subsequently retained counsel (*see* D.I. 4, 6), but counsel has not attempted to withdraw the *pro se* Notice of Removal and has refused to confer with Plaintiffs' counsel. (*See infra* in Part G.)

(App'x 243-44.) Dismissal of the Puerto Rico Litigation is forthcoming.

**G. Mintvest Refuses to Meet and Confer Before Plaintiffs Are Forced to Move to Remand**

21.    Plaintiffs' counsel contacted Mintvest's counsel on June 26, 2025 to request a meet and confer in advance of incurring the cost to draft and file this motion. (Curran Decl. ¶ 5 & Ex. 1 at 5.) Plaintiffs' counsel identified the lack of jurisdiction, and stated, "[b]efore we prepare a motion to remand on those grounds – which will also seek to recover our fees under 28 USC § 1447(c) – we'd like to confer with you about the dispute." (*Id.*) Mintvest's counsel did not respond. (*Id.* at ¶ 6.)

22.    On July 1, Plaintiffs' counsel sent a second email requesting to meet and confer. (*Id.* at ¶ 7 and Ex. 1 at 4.) Plaintiffs' counsel wrote, "[p]lease advise if you are willing to speak with us in an effort to avoid the costs of litigation. We will otherwise inform the court that we sought to meet and confer in advance of our remand motion, but that Mintvest was unwilling to confer with us." (Ex. 1 at 4)

23.    Mintvest's Delaware counsel initially offered to speak with Plaintiffs' counsel the following day, on July 2. (*Id.* at ¶ 8 and Ex. 1 at 3.) However, Prieur Leary, the president of Mintvest, then unexpectedly replied to the email chain (suggesting that Mintvest's counsel had BCC'd him on his response to Plaintiffs' counsel), stating, "the remand was anticipated, and unless there is an ethical obligation to speak with [Plaintiffs' counsel], I don't see the point. He is just going to try to scare/bully us, and that is just a waste of time. Maybe good to speak to him next week, with Jane [Becker Whitaker] after the Motion to Transfer has been filed." (*Id.* at ¶ 9 and Ex. 1 at 2.)

24.    On July 2, Leary sent another email stating that he and Whitaker "think it is best we get the Motion to Transfer filed before we speak with [Plaintiffs' counsel]. . . . Please try to get

the call re-scheduled for mid-next week; should have the Motion to Transfer filed by then." (*Id.* at ¶ 10 and Ex. 1 at 2.) Shortly thereafter, Plaintiffs' counsel emailed Mintvest's Delaware counsel and requested to be removed from the email chain. (*Id.* at ¶ 11 and Ex. 1 at 1.)

25.     That same day, Mintvest filed a motion to transfer venue without meeting and conferring with Plaintiffs' counsel. (D.I. 7.) Mintvest's counsel also did not return a voicemail that Plaintiffs' counsel left that afternoon yet again seeking to confer. (*Id.* at ¶¶ 12-13.)

26.     On July 3, the Court issued a Notice informing Mintvest that it failed to comply with Local Rule 7.1.1 requiring that "every non-dispositive motion shall be accompanied by an averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion." To date, Mintvest has failed to file the required Rule 7.1.1 statement.

27.     On July 16, 2025, Plaintiffs' counsel made a fourth and final attempt to confer with Mintvest's counsel regarding Plaintiffs' motion for remand, stating that "otherwise we will advise the court that we have not been able to confer." (Curran Decl. ¶ 15 and Ex. 2 at 1.) The parties met and conferred that same day, and Mintvest's counsel refused to withdraw the Notice of Removal.

## ARGUMENT

28.     This case must be remanded because this Court does not have subject-matter jurisdiction over the dispute. This Court should also order Mintvest to reimburse Plaintiffs' reasonable costs and attorneys' fees incurred in responding to its wrongful removal, as authorized under § 1447(c).

## I. Legal Standard

29.     Only state court actions "that originally could have been filed in federal court may be removed to federal court by the defendant." *Kline v. Security Guards, Inc.*, 386 F.3d 246, 252 (3d Cir. 2004) (citation omitted). If the case could not have been filed originally in federal court, then removal under 28 U.S.C. § 1441 "is improper." *Zohar CDO 2003-1, Ltd. v. Croscill Home LLC*, 2018 WL 881758, at *6 (D. Del. Feb. 14, 2018).

30.     A plaintiff may challenge removal by moving to remand the case back to state court. 28 U.S.C. § 1447(c). Remand is appropriate for a "lack of district court subject matter jurisdiction." *Coit Cap. Sec., LLC v. Turbine Asset Holdings, LLC*, 2018 WL 11183627, at *1 (D. Del. Jan. 8, 2018) (citation omitted). On a remand motion, it is Mintvest's burden "to prove the propriety of removal" and "any doubts about the existence of federal jurisdiction must be resolved in favor of remand." *Id.* In determining whether remand based on improper removal is appropriate, a court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and must assume all factual allegations therein are true. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

## II.    This Action Should Be Remanded for Lack of Subject-Matter Jurisdiction

31.     The Court lacks subject-matter jurisdiction over this action. Mintvest's sole alleged basis for invoking this Court's subject-matter jurisdiction is federal-question jurisdiction under 28 U.S.C. § 1331; the Notice of Removal does not (and cannot) assert diversity jurisdiction. (D.I. 1, at 2; App'x 243.) But Mintvest's invocation of § 1331 is without basis because Mintvest fails to plead any of the elements of federal-question jurisdiction.

32.     A court has federal-question jurisdiction over cases that "aris[e] under" federal law. 28 U.S.C. § 1331. A case can "aris[e] under" federal law in two ways. First, a case arises under

federal law "when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). This is known as the well-pleaded complaint rule. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271 (3d Cir. 2001). Under this rule, "removal is proper[] only if there is a federal question presented on the face of the plaintiff's properly pleaded complaint." *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 353 (3d Cir. 1995).

33.     Second, a case can arise under federal law through *Grable* jurisdiction, which is inherently limited in nature and scope. *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412–13 (3d Cir. 2015) (discussing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005)). As the Third Circuit has explained,

> [C]auses of action under state law may nonetheless "arise under" federal law for purposes of § 1331 if the four-pronged *Grable* test is met. [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

*Manning*, 772 F.3d at 163. The focus of the *Grable* analysis, like that of the well-pleaded complaint rule, "remains on the plaintiff's cause of action and whether it implicates significant federal issues." *Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp. 2d 629, 633 (D. Del. 2008). *Grable* jurisdiction is reserved for a "special and small" category of cases, *Grable*, 545 U.S. at 312, and the exercise of jurisdiction pursuant to this test is "rare," *Sanyo Elec. Co., Ltd v. Intel Corp.*, 2019 WL 1650067, at *4 (D. Del. Apr. 17, 2019).

34.     Here, Mintvest has failed to establish the existence of federal-question jurisdiction pursuant to either the well-pleaded complaint rule or *Grable* jurisdiction.

### A. Mintvest Fails to Establish Subject-Matter Jurisdiction Under the Well-Pleaded Complaint Rule

35.     Mintvest does not (and cannot) allege the existence of a federal cause of action on the face of Plaintiffs' well-pleaded complaint. Plaintiffs' claims do not arise under federal law;

instead, they "arise purely under Delaware law"—specifically, the Delaware Declaratory Judgment Act, 10 *Del. C.* § 6501. *Zohar CDO 2003-1*, 2018 WL 881758, at \*9; (D.I. 1-1, at ¶¶ 17–19, 40–75). Because the law that creates the cause of action is state law, the Court "does not have jurisdiction to sustain removal." *Zohar CDO 2003-1,* 2018 WL 881758, at \*9 (granting remand and holding claims brought pursuant to specific Delaware statutes did not arise under federal law); *see also Alessi v. Beracha*, 244 F. Supp. 2d 354, 356 (D. Del. 2003) (holding "a defendant may not remove a state law claim . . . if the plaintiff pleads only state law claims").

36.     In its Notice of Removal, Mintvest does not dispute that claims under the Delaware Declaratory Judgment Act are state law claims. Instead, Mintvest simply states that federal-question jurisdiction exists in this case because, supposedly, "the underlying dispute involves claims under federal securities law." (D.I. 1, at 2.) That is Mintvest's entire argument for federal jurisdiction—a single sentence, without factual or legal support to support its contention. The lack of *any* proper argument in support of removal is itself a sufficient basis for remand. *Manning*, 772 F.3d at 165 (holding that § 1331 "does not provide a basis to exercise jurisdiction over Plaintiffs' claims" where "Defendants do not purport to cite a single case regarding § 1331 (other than *Grable* and *Gunn*) in support of their contention that a question of federal law is necessarily raised here").

37.     Furthermore, Mintvest's assertion is simply untrue. Mintvest has *never* filed a federal securities law claim (or any claim under federal law) against Plaintiffs. To the contrary, in the Puerto Rico Litigation, the Report and Recommendation recommends *denying* Mintvest's request to amend its complaint to add federal securities claims, both because it is untimely and because the Puerto Rico court does not have jurisdiction over the case. (App'x 244–47.) There is no basis for Mintvest's false assertion that the "underlying dispute" involves claims under federal securities law, when that dispute contains no such claims.

12

38.     Nor can Mintvest argue that the Delaware Complaint is an "[a]nticipatory filing" to avoid federal jurisdiction. (D.I. 1, at 2.) It is indisputable that Plaintiffs filed the Delaware Litigation *before* Mintvest filed for leave to amend its complaint to add federal causes of action. As the threat of a federal cause of action "was far from imminent" when Plaintiffs initiated the Delaware Litigation, Mintvest cannot assert federal-question jurisdiction on this basis. *See Nw. Cent. Pipeline Corp. v. Mesa Petroleum Co.*, 576 F. Supp. 1495, 1503 (D. Del. 1983) (granting motion for remand where defendants filed their federal claims "one day after plaintiff's action was filed" in Delaware state court because the "threat[] [of] a suit under federal law" was "far from imminent when [plaintiff] brought suit in Chancery Court").

39.     Moreover, even if the Delaware Litigation was "anticipatory" as Mintvest contends (it was not), remand would *still* be required. As the *Zohar* court ruled, "there is no precedent" supporting the argument "that a federal court must retain federal question jurisdiction of a removed declaratory judgment action in which it is alleged that the federal question is intentionally sidestepped through plaintiff's artful pleading." *Zohar CDO 2003-1*, 2018 WL 881758, at *10. To the contrary, the analysis is based on the complaint that Plaintiffs actually filed.

40.     Finally, to the extent Mintvest now intends to bring its purported claims for federal securities violations as counterclaims in response to Plaintiffs' Delaware complaint, such anticipated counterclaims cannot "create[] federal jurisdiction" that does not otherwise exist. *Claus v. Trammell*, 2018 WL 6033482, at *2 (D. Del. Nov. 16, 2018), *aff'd*, 773 F. App'x 103 (3d Cir. 2019).

41.     Because Mintvest fails to establish subject-matter jurisdiction under the well-pleaded complaint rule, this action must be remanded to Delaware state court.

13

**B. Mintvest Fails to Establish Subject-Matter Jurisdiction Under the *Grable* Test**

42.     Mintvest likewise fails to establish the existence of subject-matter jurisdiction under the four *Grable* factors. As noted above, under that test, federal jurisdiction exists over a state-law claim *only if* that claim involves a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Manning*, 772 F.3d at 163. Mintvest cannot meet any of these factors.

43.     ***Grable Factors #1 and #2***—At the outset, Mintvest fails to satisfy even the most basic *Grable* factors, as it cannot show that a purported federal issue is "necessarily raised," let alone that it is "actually disputed." For a federal issue to be "necessarily raised," the plaintiff must need to "win on an issue of federal law" to "prove some element of a state-law claim." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 709 (3d Cir. 2022) (emphasis omitted). That is not the case here. No issue of federal law is raised at all in Plaintiffs' complaint, much less is one that Plaintiffs must "win" in order to prevail in their state-law claims. This alone is a sufficient basis for remand. *Manning*, 772 F.3d at 165 ("Because we conclude that no federal issue has been necessarily raised here, we need not decide whether the other three *Grable* requirements are met.").

44.     Further, Mintvest's failure to make any argument or cite any evidence to the contrary in its Notice of Removal is separate grounds for remand. *See id.* (holding "that § 1331 does not provide a basis to exercise jurisdiction over Plaintiffs' claims" where "Defendants do not purport to cite a single case regarding § 1331 . . . in support of their contention that a question of federal law is necessarily raised here"); *Doyle v. Tolan Accretive Health, Inc.*, 2013 WL 12155521, at *1 n.2 (D. Del. Mar. 7, 2013) (granting motion for remand where defendants "broadly state" that plaintiff's alleged breach of contract was premised on violations of federal law but "fail[] . . . to offer any support for this claim").

14

45.    *Grable Factor #3*—Next, Mintvest does not (and cannot) assert that any purported federal issue raised by the state-law claims would be "substantial." As the Third Circuit has explained, "[t]he bar for substantiality is high. It is not enough that the federal issue be significant to the particular parties in the immediate suit. Instead, [t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Williams*, 2024 WL 4927258, at \*3 (citation and quotations omitted). Mintvest makes no attempt to meet this "high" burden, nor could it—there is virtually no way a private dispute seeking declaratory relief for claims under a contract, a state construction-related statute, and a state tort claim could ever "implicate[] significant federal interests" that are important to "the federal system as a whole." *See Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010); *Williams*, 2024 WL 4927258, at \*3.

46.    *Grable Factor #4*—Lastly, Mintvest does not even attempt to meet its burden of showing that this case is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Manning*, 772 F.3d at 163. Mintvest is effectively seeking Merger Consideration under the Merger Agreement—which is governed by Delaware law (App'x 92, at § 10.7)—despite re-styling its claims under a Puerto Rico construction statute and "tort" law. The interpretation of private contracts "is ordinarily a question of state law" and Delaware courts "ha[ve] an interest" in the interpretation of contracts "invok[ing] Delaware law." *Affinity Empowering, Inc. v. Eurofins Sci., Inc.*, 2022 WL 6734604, at \*7–8 (D. Del. Oct. 11, 2022) (citation omitted). Similarly, the Court cannot entertain Plaintiff's "garden variety state tort law claims . . . without disturbing the congressionally approved division of labor between federal and state courts." *Delaware ex rel. Denn v. Purdue Pharma L.P.*, 2018 WL 1942363, at \*5 (D. Del. Apr. 25, 2018).

47.    Under either the well-pleaded complaint rule or the *Grable* test, there is indisputably no genuine basis for federal subject-matter jurisdiction in this Court. The case must therefore be remanded to Delaware state court.

### III.    The Court Should Order Mintvest to Reimburse Plaintiffs' Costs and Attorneys' Fees Incurred in Filing This Motion Under § 1447(c)

48.    Mintvest has failed to adequately allege or otherwise demonstrate that this Court has subject-matter jurisdiction, and it repeatedly refused to meet and confer to discuss the defects in its Notice of Removal. It even acknowledged in writing that "remand was anticipated," suggesting that Mintvest knew at the outset that it was wrongfully pursuing removal as a litigation tactic rather than in good faith.

49.    Plaintiffs were therefore forced to incur substantial costs and attorneys' fees in preparing and filing these papers, which fairness and equity dictate Mintvest should be ordered to reimburse.

50.    Section 1447(c) permits a remanding court to award costs and attorneys' fees to the plaintiff when it is in the interest of justice to do so. 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). The U.S. Supreme Court has held that under this section a court may award attorneys' fees to a plaintiff when the defendant seeking to remove an action lacks an "objectively reasonable" basis to do so. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Additionally, where the substantive basis for the removal petition "was 'frivolous' or 'insubstantial,' a district court may exercise its discretion to award fees." *Siebert v. Norwest Bank Mn.*, 166 F. App'x 603, 607 (3d Cir. 2006).

51.    In this case, Mintvest's Notice of Removal was both objectively unreasonable and "frivolous [and] insubstantial." Courts in this district have found removal to be "objectively

16

unreasonable" where a defendant fails to cite any authority to support its assertion of federal subject matter jurisdiction. *Zohar CDO 2003-1*, 2018 WL 881758, at *12. That is the case here— Mintvest simply declared in a single sentence that this Court has subject-matter jurisdiction because "the underlying dispute involves claims under federal securities law." (D.I. 1, at 2.) It did not cite any cases or make any further argument, because no cases remotely support its position.

52.    The Third Circuit has also held that a notice of removal is "frivolous or insubstantial" where "there was no colorable basis for the removal" because the plaintiff "brought th[e] action under state law." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1261 (3d Cir. 1996). Here too, Plaintiffs' causes of action are all brought under the Delaware Declaratory Judgment Act; there is not a single element of any of the pending claims that involve federal law. Moreover, Mintvest has conceded that it lacked a good faith basis for removal, acknowledging it had always "anticipated" that the case would be remanded. (Curran Decl. at ¶ 9 and Ex. 1 at 2.)

53.    An award of costs and attorneys' fees is further warranted in this case because of Mintvest's conduct with respect to Plaintiffs' attempts to meet and confer. Plaintiffs' counsel afforded Mintvest multiple opportunities to voluntarily remand the case to state court or, at a minimum, to meet and confer regarding the Notice of Removal. (*Id.* at ¶¶ 8–10.) It was not until Plaintiffs stated that they would inform the Court of Mintvest's ongoing refusal that Mintvest agreed to meet and confer. (*Id.* at ¶¶ 7-8 and Ex. 1 at 3-5.)

54.    Mintvest's removal, its subsequent motion to transfer, and its ongoing refusal to confer with Plaintiffs' counsel evidence an improper approach to litigation that seeks to manufacture "leverage" rather than addressing the merits. Mintvest's misconduct has forced this Court to needlessly expend its limited judicial resources, and it has forced Plaintiffs to unfairly

incur tens of thousands of dollars of costs and attorneys' fees. It is therefore equitable and just that this Court exercise its discretion to direct Mintvest to reimburse those fees.

## CONCLUSION

55.     For the foregoing reasons, Plaintiffs' motion to remand should be granted and its attorneys' fees should be reimbursed by Mintvest.


Dated:  July 16, 2025                                    Respectfully Submitted,

/s/ Jason Z. Miller
Neal C. Belgam (No. 2721)
Jason Z. Miller (No. 6310)
**SMITH, KATZENSTEIN & JENKINS LLP**
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
jmiller@skjlaw.com

Jonathan Kortmansky (*pro hac vice*)
Douglas S. Curran (*pro hac vice*)
**ANDERSON KILL P.C.**
7 Times Square, 15th Floor
New York, New York 10036
Tel. (212) 278-1000
jkortmansky@andersonkill.com
dcurran@andersonkill.com

*Counsel for Plaintiffs New York Digital
Investment Group, LLC, NYDIG Trust
Company LLC, and Stone Ridge Holdings
Group LP*

18