IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NEW YORK DIGITAL INVESTMENT GROUP LLC, NYDIG TRUST COMPANY LLC, NYDIG MINING LLC, and STONE RIDGE HOLDINGS GROUP LP,

*Plaintiffs,*

v.

MINTVEST CAPITAL, LTD.,

*Defendant.*

C.A. No.: 25-cv-714-MN

**OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND FOR REIMBURSEMENT OF REASONABLE ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1447(c)**

Defendant Mintvest Capital, Ltd. (Defendant) respectfully submits this opposition to motion to remand and for reasonable attorneys' fees.

## I. NATURE AND STAGE OF THE PROCEEDINGS

1. Defendant has no quarrel with Plaintiffs' description of the procedural status of filings in the jurisdiction of Delaware. Nonetheless, Plaintiffs omit key information as to what has happened in the jurisdiction of Puerto Rico.

2. Plaintiffs filed a complaint for declaratory relief (the "Complaint") on April 21, 2025 in the Delaware Superior Court. (D.I. 1-1.). The Complaint contains three causes of action seeking a declaration under the Delaware Declaratory Judgment Act, 10 *Del.* C. § 6501, that Defendant Mintvest Capital Ltd. ("Mintvest") is not entitled to any payments pertaining to NYDIG LLC's acquisition of Coinmint LLC ("Coinmint"), a bitcoin mining company in which Mintvest formerly had an ownership interest. Mintvest removed the action to this Court on June 9, 2025. (D.I. 1.).

3. In their discussion of the procedural history of this case, Plaintiffs fail to mention that in Puerto Rico federal district court, Mintvest sought to amend its original Complaint, which was based on diversity jurisdiction, against plaintiffs herein to include a claim of federal securities fraud. Plaintiffs herein opposed that request vehemently, asking that leave to amend be denied because there was no such claim such that amendment would be futile. The magistrate judge to whom the Motion to Dismiss for lack of jurisdiction was referred, did recommend dismissing the case, but he recommended dismissing without prejudice. *See* Exhibit 1, Docket 99 in 24-1019 (FAB).

4. As Plaintiffs know because the undersigned provided a copy to their counsel, Mintvest has filed a Complaint against Energy & Compute, LLC for keeping Mintvest's 18.2% participation in the purchase and merger effected by plaintiffs herein. Today, Mintvest amended that Complaint as of right to include claims against Energy & Compute's principal, Ashton Soniat, plaintiffs herein, and New York Life Insurance and Annuity Company. *See* Exhibit 2, Verified Amended Complaint, in 25-1346 (PAD). Those claims include the federal securities claim against plaintiffs herein, as well as RICO claims against Mr. Soniat and Energy & Compute. *Id.*

5. Plaintiffs now seek to remand this action back to state court for lack of subject-matter jurisdiction. Plaintiffs further request an award of reasonable costs and attorneys' fees associated with this application pursuant to 28 U.S.C. § 1447(c). Neither of those requests has merit.

**II.    REMOVAL WAS WARRANTED HERE BECAUSE ALL OF PLAINTIFFS' CLAIMS CONTAIN AN EMBEDDED FEDERAL QUESTION.**

**A. There is an Embedded Federal Claim Here**

6. "If the history of the interpretation of judiciary legislation teaches us anything, it teaches

the duty to reject treating such statutes as a wooden set of self-sufficient words…" *Merrell Dow Pharmaceuticals v. Thompson,* 478 U.S. 804, 810 (1986), *citing Romero v. International Terminal Operating Co.,* 358 U.S. 354, 379 (1959). Plaintiffs style their Complaint as one for a declaratory judgment regarding litigation they confront in the Federal District Court in Puerto Rico. In *Garble & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308, 314 (2005), the Supreme Court held that when confronted with a case where a "federal issue" is involved, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Here, there is an "'embedded federal question,' meaning suits in which the plaintiff pleads a state-law cause of action that necessarily turns on some construction of federal law. In such cases, removal is appropriate.

7. Here, a central issue is whether Plaintiffs violated the federal securities law. That controversy is so intertwined with plaintiffs' request for a declaratory judgment that Plaintiffs acted properly that the most propitious venue is that of this federal court, where Mintvest's suit was originally filed in January of this year. *See Ortiz Bonilla v. Federacion de Ajedrez de Puerto Rico,* 734 F.3d 28, 35 (1st Cir. 2013)("A federal court that exercises federal jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts.") *Citing BIW Deceived v. Local S6, Indus. Union of Marina & Shipbuilding Workers of Am.,* 132 F. 3d 824, 833 (1st Cir. 1997).

8. Plaintiffs' well pleaded Complaint seeks a declaratory judgment, a tactic that is frequently used as an end run against potential litigation in the jurisdiction where such litigation should occur.

9. Plaintiffs' claims are nothing more than an attempt to turn the tables on Mintvest for calling out plaintiffs' impropriety in federal court. While Plaintiffs deny that any of the

allegations in Mintvest's original case have any merit, all of those allegations arise from the same nucleus of operative facts of those presented in federal court in Puerto Rico. Therefore, plaintiffs here should raise whatever defenses they may have to the federal security claim federal court.

10. Ironically, Plaintiffs filed suit in Delaware state court, even though the Delaware Chancery Court has already held that the only court to have jurisdiction over the internal affairs of Coinmint after Coinmint moved to Puerto Rico is a Court in Puerto Rico. *In re Coinmint, LLC,* 261 A.3d 867, 907 (2021). There, the Court held: "Under established Supreme Court precedent, this Court lacks subject matter jurisdiction to afford relief that Puerto Rico has vested in its own court." *Id.*

11. Mintvest does indeed meet the factors set forth in *Grable & Sons Metal Prods., Inc. Grable* itself requires that a federal statute needs application. Unlike *Merrill Dow Pharmaceuticals v. Thompson,* 478 U.S. 804, 812 (1986), discussed in *Grable,* here, the federal statute involved, 15 U.S.C. § 78j(b), provides for a private cause of action. Moreover, the Securities and Exchange Act of 1934 is a remedial statute, which should be read liberally. *SEC v. Zandford,* 535 U.S. 813, 820 (2002). As a remedial statute, the federal government's interest in the prosecution of securities fraud is of necessity substantial. Congress has already resolved the federal state balance *vis a vis* securities fraud in favor of federal jurisdiction.

**B. Each Element of the Grable Test Is Satisfied**

12. **The State Law Claims Necessarily Raise a Federal Issue.** Plaintiffs seek a declaration that Mintvest is not entitled to payments from the Coinmint acquisition. However, Mintvest's entitlement to payment is predicated on its claim that Plaintiffs violated federal securities law—specifically, 15 U.S.C. § 78j(b) and Rule 10b-5—by fraudulently concealing material information and making misrepresentations during the acquisition process. To grant Plaintiffs the declaratory relief they seek, this Court must necessarily determine whether

4

Plaintiffs' conduct violated federal securities law. A declaration that Mintvest is not entitled to payment requires a finding that no securities fraud occurred.

13. **The Federal Issue Is Actually Disputed.** The parties fundamentally disagree about whether Plaintiffs' conduct in acquiring Coinmint without compensating Mintvest for its 18.2% interest constituted securities fraud. Mintvest alleges that Plaintiffs conducted due diligence meetings with Mintvest's principal, Prieur Leary, obtained material information about Mintvest's ownership interest, and then deliberately excluded Mintvest from the transaction. Plaintiffs dispute these allegations. This actual dispute over federal securities law violations is at the heart of the declaratory judgment action.

14. **The Federal Issue Is Substantial.** The Securities Exchange Act of 1934 is a remedial statute that should be read liberally. *SEC v. Zandford*, 535 U.S. 813, 820 (2002). The federal government has a substantial interest in the uniform application and enforcement of federal securities laws. Unlike the federal claim in *Merrell Dow*, 478 U.S. at 812, Section 10(b) provides for a private cause of action, demonstrating Congress's intent that such claims be adjudicated in federal court. The alleged securities fraud involves the acquisition of a substantial bitcoin mining operation and impacts interstate and even international commerce.

15. **Federal Jurisdiction Will Not Disturb the Federal-State Balance.** Congress has already resolved the federal-state balance regarding securities fraud claims in favor of federal jurisdiction by creating exclusive federal jurisdiction over Exchange Act claims. See 15 U.S.C. § 78aa. Exercising federal jurisdiction here aligns with congressional intent and maintains uniformity in securities law enforcement. Moreover, this case involves supplemental state law claims arising from the same nucleus of operative facts as the federal securities claims, making federal court the appropriate forum. *See Ortiz Bonilla v. Federacion de Ajedrez de Puerto Rico*, 734 F.3d 28, 35 (1st Cir. 2013).

**C. The Declaratory Judgment Act Does Not Defeat Federal Jurisdiction**

16. While Plaintiffs styled their complaint as one for declaratory relief, this Court must look beyond the form to the substance of the dispute. The Declaratory Judgment Act is procedural and does not expand or limit federal jurisdiction. When determining jurisdiction in declaratory judgment actions, courts consider whether the natural plaintiff—here, Mintvest—could have brought a coercive action in federal court. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 19 (1983). The concern is "consistent application of a system of statutes as they have been interpreted by [the U.S. Supreme Court] over many years." *Id*. at 27.

17. Mintvest has demonstrated it can and did bring federal claims. The amended complaint filed yesterday in Puerto Rico federal court asserts federal securities fraud claims arising from the same transaction at issue here. This is not a hypothetical claim but an actual federal cause of action now pending in federal court. Plaintiffs' attempt to use a state court declaratory judgment action to preempt federal jurisdiction over federal claims is improper.

**D. Remand Would Be Futile and Wasteful**

18. Even if this Court were inclined to remand, such action would be futile and a waste of judicial resources. Mintvest has now filed federal securities and RICO claims in the District of Puerto Rico that directly relate to the same transaction. If remanded, Mintvest would immediately seek to transfer the state court proceedings to the Puerto Rico forum, which is, as the Delaware Chancery Court has held, the only court with jurisdiction over the internal affairs of Coinmint.

19. The interests of judicial economy strongly favor retaining federal jurisdiction to transfer the case to the Puerto Rico federal court. All claims—both the federal securities and RICO claims and the related state law issues—arise from the same nucleus of operative facts concerning

the Coinmint acquisition. Fragmenting this dispute across multiple fora would risk inconsistent judgments and waste judicial resources.

**III. THE INTERNAL AFFAIRS DOCTRINE AND CHOICE OF LAW CONSIDERATIONS**

20. Courts have already ruled on Mintvest's ownership interest in Coinmint, LLC, the company Plaintiffs acquired without compensating Mintvest for its ownership interest therein. Defendants were well aware of this relationship, having gone so far as to conduct a meeting with Prieur Leary, Mintvest's principal, for the purpose of acquiring further information about Mintvest's interest in Coinmint. After Mr. Leary divulged his former partner's bad acts and the legal decisions undermining that conduct, Defendants then purchased Coinmint without compensating Mintvest for its 18.2% interest.

21. The central issue in this litigation is to which court this Court should afford res judicata effect. The United States Supreme Court has resolved this issue repeatedly in favor of the state where the corporation is chartered, primarily due to Justice John Marshall's insight that a corporation's "[b]eing a mere creature of law, it possesses only those properties which the **charter of its creation** confers upon it." *Trustees of Dartmouth College v. Woodward,* 4 Wheat 518, 636 (1819)(Emphasis added). The inevitable conclusion from Justice Marshall's logic is that the courts in the jurisdiction where the corporation is incorporated have exclusive jurisdiction to determine the respective rights of the owners of that corporation. Here, that Court is the Chancery Court of Delaware. This Court should afford that court's decision full faith and credit.

22. "Every State in this country has enacted laws regulating corporate governance." *CTS Corp. v. Dynamics Corporation of America,* 481 U.S. 69, 90 (1987). "This beneficial free market system depends on its core upon the fact that a corporation – except in the rarest of situations – is organized under, and governed by <u>the law of a single jurisdiction</u>, traditionally the

corporate law of the State of its incorporation." *Id.* at 89. (Emphasis added).

23. The internal affairs doctrine is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Atherton v. FDIC*, 519 U.S. 213, 224 (1997), *citing Edgar v. MITE Corp.,* 457 U. S. 624, 645 (1982). *Atherton* at 224. The U.S. Supreme Court has consistently recognized that the law of the state of incorporation governs internal corporate affairs. *Kamen v. Kemper Fin. Servs., Inc*., 500 U.S. at 98-99; *Cort v. Ash*, 422 U.S. 66, 84 (1975).

24. The internal affairs doctrine is not only a principle of conflicts law but one of constitutional dimensions. *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005); *see also CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 89 (1987) (recognizing constitutional implications of internal affairs doctrine). The doctrine recognizes that only one state should have the authority to regulate a corporation's internal affairs as to "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. *Edgar v. MITE Corp*., 457 U.S. at 645; see also *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983).

25. There is an exception to the internal affairs doctrine "in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which the local law of the other state will be applied." *FDIC v. Baldini,* 983 F. Supp. 772, 777 (S.D.W.V. 2013). Here, Texas, the state where CLT preferred to litigate, had no particular relationship to the Mintvest's dilution, which occurred in many different places on the globe, and the main work of the business took place in New York, a forum that neither party chose. The determination of membership interests is "precisely the kind of internal corporate relationship that the internal affairs doctrine is intended to regulate."

*Peterson v. Kennedy*, 771 F.3d 429, 433 (8th Cir. 2014).

26. Moreover, the Delaware Chancery Court has already held that at the time of conversion, Mintvest held an 18.2% equity stake in Coinmint. The Court found that "Leary and Soniat agreed to peg Mintvest's equity stake at 18.2%," and that Leary "repeatedly and informally requested capital from CLT, and CLT provided that capital without insisting on formalities." In re Coinmint, LLC, at 894. This arrangement was documented in the October 2017 Agreement, which "memorialized this agreed-to equity split." *Id.* at 881.

27. Puerto Rico's limited liability company statute explicitly vests jurisdiction over internal affairs disputes in the Court of First Instance. 14 L.P.R.A. § 3960(a) grants jurisdiction to determine "the validity of any admission, election, appointment, removal or resignation of a manager of a limited liability company." Similarly, 14 L.P.R.A. § 3998 vests jurisdiction over LLC dissolution proceedings in the Court of First Instance. 14 L.P.R.A. § 3951 (j) addresses the rights of members of a limited liability company to receive benefits from the company, such as profits and distribution of the company's assets. 14 L.P.R.A. § 3961 provides that the relevant Superior Court can resolve disputes as to the LLC's operating agreement.

28. Thus, Puerto Rico's limited liability company statute has provisions like those of the relevant statute in Delaware. The Delaware Chancery Court respected the right of the Puerto Rico Court's to address disputes as to the company's dissolution after it relocated to Puerto Rico. Mintvest asks this Court to give full faith and credit to the Delaware Court's final decision as to the relative membership interests of CLT and Mintvest in Coinmint for the purpose of this litigation.

## IV. PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES

29. An award of attorneys' fees under 28 U.S.C. § 1447(c) is appropriate only when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v.*

9

*Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, Mintvest had multiple objectively reasonable bases for removal:

    a. The embedded federal question doctrine under *Grable* provides a colorable basis for jurisdiction;

    b. The pendency of related federal securities claims in Puerto Rico federal court demonstrates the federal nature of this dispute;

    c. The complex multi-jurisdictional aspects of this case favor federal resolution;

    d. The declaratory judgment action appears designed to circumvent federal jurisdiction over federal claims.

30.    Even if this Court were to disagree with Mintvest's jurisdictional arguments, the existence of reasonable arguments precludes an award of fees. Courts regularly deny fee requests where, as here, the removing party presents non-frivolous arguments for federal jurisdiction.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to remand should be denied as should its request for attorneys' fees, and this Court should transfer this case to the federal District Court for the District of Puerto Rico.

Dated: August 4, 2025

                                            Respectfully submitted,

                                            **JACK SHRUM, P.A.**

                                            /s/   *Jack Shrum*
                                            "J" Jackson Shrum (#4757)
                                            919 N. Market Street, Suite 1410
                                            Wilmington, DE 19801
                                            Telephone: (302) 543-7551
                                            Telecopier: (302) 543-6386
                                            Email: Jshrum@jshrumlaw.com
                                            *Attorney for Defendant*